## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## HELENA DIVISION

| | |
|---|---|
| KENNETH RAY CANTRELL,<br><br>            Plaintiff,<br><br>    vs.<br><br>KILOLO KIJAKAZI, Acting<br>Commissioner of the Social Security<br>Administration,<br><br>            Defendant. | CV 20-73-H-JTJ<br><br><br>**MEMORANDUM<br>AND ORDER** |

## INTRODUCTION

Plaintiff Kenneth Ray Cantrell (Cantrell) brought this action to obtain judicial review of the final decision of the Commissioner of the Social Security Administration (Commissioner), denying his application for disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-433.

## JURISDICTION

The Court has jurisdiction over this action under 42 U.S.C. § 405(g). Venue is proper given that Cantrell resides in Whitehall, Montana. 29 U.S.C. § 1391(e)(1); L.R. 1.2(c)(3). The parties have consented to have the undersigned

conduct all proceedings in this matter and enter judgment. (Doc. 20).

## **BACKGROUND**

Cantrell is 50 years old. (Doc. 21 at 21). Cantrell has a high school education. (Doc. 21 at 33). Cantrell has past work experience as a pipe fitter. (Doc. 21 at 20). Cantrell filed his application for Social Security disability and disability insurance benefits on June 15, 2017. (Doc. 21 at 13). Cantrell alleged that he became disabled on May 26, 2017. *Id.* Cantrell alleged that he became disabled due to a blood infection, the amputation of his right leg between the ankle and knee, the amputation of the 4th toe on his left foot, and neuropathy due to alcohol abuse. (Doc. 21 at 195).

An Administrative law judge (ALJ) conducted a hearing on Cantrell's application for social security benefits on October 7, 2019. (Doc. 21 at 28-49). The ALJ issued her decision on October 31, 2019. (Doc. 21 at 22). The ALJ found that Cantrell had the following severe impairments: peripheral neuropathy; amputation of the right leg below the knee; obesity; and amputation of the 4th toe on the left foot. (Doc. 21 at 15). The ALJ determined that Cantrell was not disabled at any time between May 26, 2017, and the date of her decision, October 31, 2019. (Doc. 21 at 22). *Id.* The ALJ determined that Cantrell was not disabled because he possessed the residual functional capacity to perform jobs that

2

existed in significant numbers in the national economy such as: food and beverage order clerk, document preparer, and charge account clerk. (Doc. 21 at 21).

Cantrell requested that the Appeals Council review the ALJ's decision. The Appeals Council denied Cantrell's request for review. (Doc. 21 at 1-4). The Appeals Council's denial made the ALJ's decision the final decision of the Commissioner. *Id.*

Cantrell filed the present appeal on October 13, 2020. (Doc. 2). The matter has been fully briefed. (Docs. 23, 27, 28). The Court is prepared to rule.

## **STANDARD OF REVIEW**

The Court's review in this matter is limited. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence has also been described as "more than a mere scintilla" but "less than a preponderance." *Desrosiers v. Sec. of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988).

3

## BURDEN OF PROOF

A claimant is disabled for purposes of the Social Security Act if the claimant demonstrates by a preponderance of the evidence that (1) the claimant has a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months;" and (2) the impairment or impairments are of such severity that, considering the claimant's age, education, and work experience, the claimant is not only unable to perform previous work but also cannot "engage in any other kind of substantial gainful work which exists in the national economy." *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000) (citing 42 U.S.C. §1382(a)(3)(A),(B)).

The Social Security Administration regulations provide a five-step sequential evaluation process for determining whether a claimant is disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953-954 (9th Cir. 2001); 20 C.F.R. §§ 404.1520, 416.920. *Id.* The five steps of the inquiry are:

1.   Is the claimant presently working in a substantially gainful activity? If so, the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2.   Does the claimant have an impairment that is severe or a combination of impairments that is severe? If so, proceed to step three. If not, the claimant is not disabled. *See* 20 C.F.R.

4

§§ 404.1520(c), 416.920(c).

3.    Do any of the claimant's impairments "meet or equal" one of
      the impairments described in the listing of impairments in
      20 C.F.R. Part 220, Appendix 1?  If so, the claimant is
      disabled.  If not, proceed to step four.  *See* 20 C.F.R. §§
      404.1520(d), 416.920(d).

4.    Is the claimant able to do any work that he or she has done in the
      past?  If so, the claimant is not disabled.  If not, proceed to step five.
      *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

5.    Is the claimant able to do any other work?  If so, the claimant is not
      disabled.  If not, the claimant is disabled.  *See* 20 C.F.R. §§
      404.1520(f), 416.920(f).

*Bustamante*, 262 F.3d at 954.  The claimant bears the burden of proof under steps

one through four.  *Id.*  The Commissioner bears the burden of proof under step

five.  *Id.*

### A.    ALJ's determination

The ALJ followed the 5-step evaluation process in evaluating Cantrell's

claim.  At step 1, the ALJ determined that Cantrell had not engaged in substantial

gainful activity since May 26, 2017.  (Doc. 21 at 15).

At step 2, the ALJ determined that Cantrell had the following severe

impairments: peripheral neuropathy; amputation of the right leg below the knee;

obesity; and amputation of the 4th toe on the left foot.  (Doc. 21 at 15).

At step 3, the ALJ found that Cantrell did not have an impairment, or

combination of impairments, that met or was medically equal to one of the listed impairments. (Doc. 21 at 15).

Before considering step 4, the ALJ determined Cantrell's residual functional capacity (RFC). The ALJ determined that Cantrell possessed the RFC to perform sedentary work subject to the following limitations: Cantrell can lift, carry, push, pull, 10 pounds occasionally, and less than 10 pounds frequently; Cantrell can stand or walk 2 hours in an 8-hour workday; Cantrell can sit up to 8 hours in an 8-hour workday; Cantrell can occasionally operate foot controls bilaterally; Cantrell can frequently operate hand controls bilaterally; Cantrell can frequently handle, finger and feel with his bilateral upper extremities; Cantrell can occasionally climb ramps and stairs; Cantrell can never climb ladders, ropes, or scaffolds; Cantrell can occasionally balance and stoop; Cantrell can never kneel, crouch or crawl; Cantrell must avoid all exposure to unprotected heights, moving mechanical parts, and hazards; Cantrell cannot operate a motor vehicle as a condition of employment; Cantrell must avoid all exposure to extreme cold, extreme heat, and vibration; Cantrell can carry objects with one hand only; and Cantrell's left lower extremity must be elevated to waist level at least on occasion for 1/3 of the workday. (Doc. 21 at 17).

At step 4, the ALJ determined that Cantrell was unable to perform his past

6

relevant work as a pipe fitter.  (Doc. 21 at 20).

At step 5, the ALJ determined that Cantrell possessed the RFC to perform jobs that existed in significant numbers in the national economy such as: food and beverage order clerk, document preparer, and charge account clerk.  (Doc. 21 at 21).  Based on this finding, the ALJ determined that Cantrell was not disabled. (Doc. 21 at 22).

## **CONTENTIONS**

### A.    **Cantrell's Contentions**

Cantrell argues that the Court should reverse the Commissioner's decision and remand the case for further proceedings.  (Doc. 23 at 26).  Cantrell argues that the Court should reverse the Commissioner's decision for the following reasons:

1.    The ALJ failed to properly evaluate the medical opinions of treating physician Dr. Terrence Cahill, M.D., and treating physician's assistant Steven Sacry, PA-C., in accordance with the Social Security Administration's new regulations;

2.    The ALJ failed to properly evaluate Dr. Cahill's opinions and Mr. Sacry's opinions based on a fully developed record that included the most recent treatment records prepared by Dr. Cahill and Mr. Sacry; and

3.    The ALJ failed to provide sufficient reasons for discounting his testimony regarding the severity of his limitations.

(Doc. 23 at 1-2).

7

B.     **Commissioner's Position**

The Commissioner argues that the Court should affirm the ALJ's decision

because the ALJ's decision was based on substantial evidence and was free of

legal error.

## DISCUSSION

A.     **Opinions of Dr. Cahill and Mr. Sacry**

a.     **Dr. Cahill, M.D.**

Dr. Cahill, M.D., was one of Cantrell's treating sources.  Dr. Cahill began

providing medical treatment to Cantrell following the amputation of his right

lower leg on June 2, 2017.  (Doc. 21 at 299, 729).  Dr. Cahill provided medical

treatment to Cantrell multiple times between August 8, 2017, and March 15, 2018.

(Doc. 21 at 212, 297-302, 673-674, 704-710, 714, 717).

Dr. Cahill drafted a medical opinion letter on January 10, 2019.  (Doc. 21 at

729).  Dr. Cahill stated that Cantrell had multiple medical issues that produced

significant pain and made it difficult for Cantrell to walk short distances and stand.

*Id.*  Dr. Cahill noted that Cantrell's medical issues included an amputated right

lower leg, neuropathy and vascular disease in his left foot, and neuropathy in his

upper extremities.  *Id.*  Dr. Cahill opined that Cantrell's lack of mobility and

8

significant pain would make it difficult for Cantrell to be successful in a competitive work environment. (Doc. 21 at 729).

Dr. Cahill drafted a second medical opinion letter on September 10, 2019. (Doc. 21 at 732). Dr. Cahill noted that Cantrell continued to have medical issues with his left foot and hands. *Id.* Dr. Cahill noted that the degenerative changes in Cantrell's left foot had progressed. *Id.* Dr. Cahill noted that Cantrell was "unable to consistently walk short distances or stand." *Id.* Dr. Cahill stated that he did not expect Cantrell's medical conditions to improve, and that he expected Cantrell's ability to function to decline further. *Id.* Dr. Cahill stated that he was not aware of any work environment in which Cantrell could be successful given his medical conditions. (Doc. 21 at 732).

The ALJ concluded that the opinions offered Dr. Cahill on January 10, 2019, and on September 10, 2019, were not persuasive. The ALJ stated that Dr. Cahill's opinions were not persuasive because "they were not supported by contemporaneous examination notes or . . . imaging," even though "[Cantrell] and his attorney were afforded every opportunity to update the record" before the hearing on October 7, 2019. (Doc. 21 at 20).

### b. Mr. Sacry, PA-C

Physician's assistant Steven Sacry, PA-C., was one of Cantrell's treating

9

sources. Mr. Sacry began treating Cantrell in 2005. (Doc. 21 at 733). Mr. Sacry

provided treatment to Cantrell for his amputated right leg, his amputated toe on his

left foot, his hand neuropathy, and his chronic pain. (Doc. 21 at 211, 646-648,

659-660, 666, 724). Mr. Sacry filled-out a Residual Functional Capacity form for

Cantrell in July 2018. (Doc. 21 at 725). Mr. Sacry stated on the form that Cantrell

had several functional limitations, including: an inability to stand for more than 10

minutes at one time, an inability to stand for more than 6 hours in an 8 hour day,

the need for frequent position changes, and the need to elevate is left foot. (Doc.

21 at 725).

The ALJ discounted the opinions stated by Mr. Sacry on the

Residual Functional Capacity form. The ALJ stated that Mr. Sacry's opinions

were not persuasive because they were not consistent with a medical treatment

note from Treasure State Orthotic & Pros dated March 16, 2018, which stated that

Cantrell ambulated "very well" while testing his new right prosthetic leg. (Doc.

21 at 20, 720).

Mr. Sacry drafted a medical opinion letter on September 12, 2019. (Doc. 21

at 733). Mr. Sacry opined that Cantrell's efforts to obtain a medical disability

were appropriate given his medical issues with his right leg, left foot and hands.

(Doc. 21 at 733). Mr. Sacry stated that Cantrell's amputated right leg and

10

deteriorating left foot made it "difficult for [Cantrell] to stand for any length of time." *Id.* Mr. Sacry stated that Cantrell's ability to use his hands was limited due to neuropathy. *Id.* Mr. Sacry further stated that he was "not aware of any working environment where Ken Cantrell would be successful." (Doc. 21 at 733).

The ALJ discounted these opinions by Mr. Sacry. The ALJ stated that Mr. Sacry's opinions were not persuasive because they were "not supported by updated examination notes." (Doc. 21 at 20). The ALJ noted that the most recent treatment note prepared by Mr. Sacry was dated September 14, 2017, which pre-dated Cantrell's receipt of his prosthetic device for his amputated right leg. (Doc. 21 at 20, 659).

Cantrell argues that the ALJ committed two errors when he discounted the opinions of Dr. Cahill and Mr. Sacry. Cantrell argues that the first error occurred when the ALJ failed to evaluate Dr. Cahill's and Mr. Sacry's medical opinions in accordance with the Social Security Administration's new regulations. Cantrell argues that the second error occurred when the ALJ issued her decision without obtaining updated treatment notes from Dr. Cahill and Mr. Sacry.

### c.   New Regulations

Cantrell filed his application for social security benefits after March 27, 2017. The ALJ was therefore required to apply the new regulations when she

11

evaluated medical opinions. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017). The new regulations eliminated the hierarchy that gave the opinions of treating sources more weight than non-treating sources, and gave the opinions of examining sources more weight than non-examining sources. *See* Revisions to Rules, 2017 WL 168819. Under the new regulations, the ALJ must consider and evaluate the persuasiveness of all medical opinions based on some or all of the following factors:

1.  The supportability of the opinion;

2.  The consistency of the opinion;

3.  The medical source's relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of examinations);

4.  The medical source's specialization;

5.  The medical source's familiarity with other evidence in the record; and

6.  The medical source's familiarity with the social security disability program requirements.

20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(a), (b)(2).

The factors that an ALJ must address in a particular case depends on whether the medical opinion is contradicted or uncontradicted. 20 C.F.R. § 404.1520c(a)-(b). If the medical opinion is uncontradicted, the ALJ need only

address the supportability and consistency factors. 20 C.F.R. §§ 404.1520c(b)(2),

416.920c(b)(2).

The supportability factor looks inward at the medical evidence presented in

support of the medical opinion. A medical opinion that is supported by significant

relevant medical evidence is more persuasive. Conversely, a medical opinion that

is not supported by relevant medical evidence is less persuasive. 20 C.F.R.

§ 404.1520c(c)(1).

The consistency factor, on the other hand, looks outward. The consistency

factor compares the medical opinion to other medical and non-medical evidence in

the record. A medical opinion that is consistent with the other medical and non-

medical evidence in the record is more persuasive. 20 C.F.R. § 404.1520c(c)(2).

Conversely, a medical opinion that is not consistent with the other medical and

non-medical evidence in the record is less persuasive. *Id.*

When an ALJ must decide between two differing but equally persuasive

medical opinions on the same issue, the ALJ must consider all of the referenced

factors including: the medical source's relationship with the claimant, the medical

source's specialization, the medical source's familiarity with other evidence in the

record, and the medical source's familiarity with social security disability program

requirements. 20 C.F.R. §§ 404.1520c(b)(2)-(3); 416.920c(b)(2)-(3).

13

Under current Ninth Circuit law, an ALJ must provide "clear and convincing" reasons to reject an uncontradicted opinion from a treating or examining doctor, and an ALJ must provide "specific and legitimate" reasons to reject a contradicted opinion from a treating or examining doctor. *Lester v. Chater*, 81 F.3d 821, 830-831 (9th Cir. 1995). The Ninth Circuit has not yet addressed whether the new regulations alter these standards. See, e.g., *Robert v. Saul*, 2021 WL 1214518, at *4 (D. Or. March 3, 2021); *Titus L.S. Saul*, 2021 WL 275927, at *6 (C.D. Cal. Jan. 26, 2021). Nevertheless, the new regulations require the ALJ to explain her reasoning for discounting a medical opinion from a treating or examining physician. See 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ must explain "how persuasive" she found the medical opinion to be based on the applicable factors, and the ALJ's reasoning must be supported by substantial evidence. *Machelle H. v. Kijakazi*, 2021 WL 4342313, at *7 (D. Idaho Sept. 22, 2021).

Here, the ALJ addressed only the supportability factor. The ALJ stated that she had discounted the opinions offered by Dr. Cahill and Mr. Sacry because the record did not contain "contemporaneous" treatment notes from Dr. Cahill and Mr. Sacry. (Doc. 21 at 19-20). The ALJ failed to address the consistency factor. The ALJ failed to discuss whether Dr. Cahill's and Mr. Sacry's opinions were

14

consistent with the other medical and non-medical evidence in the record. The
failure to address the consistency factor was legal error.

### d.    Duty to Fully Develop the Record

The ALJ became aware, during the hearing, that the administrative record
was incomplete given that it did not contain updated treatment records from
Dr. Cahill and Mr. Sacry. (Doc. 21 at 31-32). The ALJ asked Cantrell's lawyer
why Dr. Cahill's and Mr. Sacry's updated treatment records were not in the record.
(Doc. 21 at 31-32). Cantrell's lawyer responded that he "simply screwed up." *Id.*
Cantrell's lawyer stated that he thought the updated treatment notes from Dr.
Cahill and Mr. Sacry had been included the record. *Id.*

The ALJ then asked Cantrell's lawyer whether he was aware of any
exception to the five-day rule that would permit Cantrell to make a belated
submission of the updated treatment records. (Doc. 21 at 32). Cantrell's lawyer
responded that he was not aware of any such exception. *Id.* No further discussion
of this issue occurred during the hearing. The ALJ made no attempt to obtain the
missing treatment records. The ALJ evaluated the opinions of Dr. Cahill and Mr.
Sacry and issued her decision without the without the benefit of the updated
treatment records.

Cantrell argues that the ALJ erred when she discounted the opinions of

15

Dr. Cantrell and Mr. Sacry without obtaining and reviewing their updated treatment records. Cantrell argues that the ALJ erred because she had a duty to fully develop the record before she evaluated the opinions of Dr. Cahill and Mr. Sacry.

The issue raised by Cantrell requires the Court to analyze the ALJ's general duty to develop the record and the five-day rule, and determine whether and to what extent the five-day rule narrows the ALJ's general duty to develop the record. The Court's research reveals that the Ninth Circuit has not yet addressed the issue. District Courts that have considered the issue are not in accord. See e.g., *Shackleford v. Saul*, 2020 WL 3888037, *6 (D. Conn. July 10, 2020) (collecting cases); *Lee v. Commissioner of Social Security*, 2020 WL 208045, *2 (W.D. Wash. Jan. 14, 2020); *Arthur L. v. Saul*, 2019 WL 3213229 (N.D. N.Y. July 17, 2019).

### ALJ's Duty to Develop the Record

Disability hearings are not adversarial. See *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991). Although the claimant has the burden to prove to the ALJ that he is disabled, the ALJ possesses "an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001); *Purtle v. Astrue*, 2009

16

WL 1464396, *5 (C.D. Cal. May 26, 2009).  An ALJ must assure that the record is "complete and detailed enough" to support his or her decision.  20 C.F.R. § 404.1513(e)(1)-(3).  This duty exists even when the claimant is represented by counsel.  *Celaya v.* Halter, 332 F.3d 1177, 1183 (9th Cir. 2003)*; Crane v. Shalala*, 76 F.3d 251, 255 (9th Cir. 1996).  The ALJ's duty to develop the record is triggered when the medical evidence is ambiguous, or when there is an obvious gap or inconsistency in the record that would prevent the ALJ from properly evaluating the evidence.  *Tonapetyan*, 242 F.3d at 1150.

The ALJ may discharge her duty to develop the record in the following ways: 1) by making a reasonable attempt to obtain the missing medical evidence from the claimant's treating sources; 2) by subpoenaing or submitting questions to the claimant's treating sources; 3) by continuing the hearing; or 4) by keeping the record open after the hearing for supplementation.  *Id*; *Hoth v. Colvin*, 2014 WL 6610897, *6 (E.D. Cal. Nov. 19, 2014).

**Five-Day Rule**

The five-day rule states that a claimant must either submit or inform the ALJ about all written evidence to be presented at the hearing no later than five business days before the hearing.  20 C.F.R. § 404.935(a).  When a claimant attempts to submit evidence in violation of the five-day rule, an ALJ may decline

to consider the evidence unless the claimant can show: 1) that he was "misled" by some action; 2) that he had a "physical, mental, educational, or linguistic limitation" that prevented him from disclosing or submitting his evidence in a timely manner; or 3) that some other "unusual, unexpected or unavoidable circumstance" beyond the claimant's control prevented him from submitting the evidence to the ALJ in accordance withe five-day rule.  20 C.F.R. § 404.935(b); 20 C.F.R. § 416.1435(b).

Here, there was a clear gap in the record with respect to the treatment records of Dr. Cahill and Mr. Sacry.  The updated treatment records of Dr. Cahill or Mr. Sacry were missing.  The ALJ made no attempt to obtain the missing treatment records or hold the record open so Cantrell could obtain them.  The ALJ discounted the opinions of Dr. Cahill and Mr Sacry without obtaining their updated treatment records.  On the other hand, Cantrell failed to comply with the five-day rule.  Cantrell's lawyer conceded, during the hearing, that none of the exceptions to the five-day rule would apply.

The Court does not find it necessary to resolve the conflict that appears to exist between ALJ's duty to develop the record and the five-day rule.  The Court has previously determined that this matter must be remanded to the ALJ for further proceedings based on the ALJ's failure properly evaluate the opinions of Dr.

18

Cahill and Mr. Sacry under the new Social Security Regulations. On remand, Cantrell must assure that the ALJ receives all of the updated treatment records of Dr. Cahill and Mr. Sacry in a timely manner so the ALJ may properly consider them.

**B.      Cantrell's Testimony Regarding the Severity of His Limitations**

Cantrell argues that the ALJ erred when she failed to provide sufficient reasons for discounting his testimony regarding the severity of his limitations.

An ALJ must engage in a two-step analysis when determining whether a claimant's testimony regarding her subjective pain or symptoms is credible. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014).

If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ may reject the claimant's testimony about the severity of her symptoms only if the ALJ offers "specific, clear and convincing reasons for doing so." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The ALJ must identify the portion of the claimant's testimony she finds not credible and describe the evidence that undermines the claimant's testimony.

19

*Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014).

An ALJ may consider the following factors in determining whether a claimant's testimony is credible: the claimant's reputation for truthfulness; inconsistent statements by the claimant regarding her symptoms; inconsistencies between the claimant's testimony and her conduct; the claimant's daily activities and work record; the claimant's failure to seek treatment or to follow a doctor's prescribed course of treatment; and the testimony of physicians and third parties concerning the nature, severity, and effect of the claimant's alleged symptoms. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014).

Here, the ALJ stated that she rejected Cantrell's subjective complaints because "the record fails to support [Cantrell's] allegations concerning an inability to perform all work activity as of May 26, 2017, the alleged onset date." (Doc. 21 at 18). The ALJ then summarized some of the available medical evidence and weighed the medical opinions, noting a lack of updated treatment records. (Doc. 21 at 18-20). Providing a summary of the medical evidence is not the same as providing clear and convincing reasons for finding a claimant's symptom testimony not credible. *Lambert v. Saul*, 980 F.3d 1266 (9th Cir. 2020). The ALJ

20

must specifically identify the testimony she finds not credible and she must explain what evidence undermines the claimant's testimony.

The ALJ also failed to consider Cantrell's alleged limitations due to pain in his amputated leg. Cantrell's treatment records show that Cantrell requires narcotic pain medication including oxycontin and fentanyl. (Doc. 21 at 660, 666). The treatment records support Cantrell's testimony that his phantom pain is worsening. (Doc. 21 at 666, 760-707). Cantrell's testimony regarding his pain should have been credited.

The ALJ erred when she failed to provide clear and convincing reasons for discounting Cantrell's testimony regarding the severity of his limitations.

Accordingly, IT IS HEREBY ORDERED:

1.      The Commissioner's decision to deny Cantrell's claim for disability and disability insurance benefits is REVERSED and REMANDED for further proceedings consistent with this Memorandum and Order.

2.      The Clerk is directed to enter judgment accordingly.

DATED this 28th day of December, 2021.

John Johnston
United States Magistrate Judge

21